

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 7, 2022**

_____
**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JACK WINSTON STANKE, JR and | § | CASE NO. 16-60110-rlj13 |
| TAMMY RENE STANKE, | § | |
| Debtors. | § | |

## <u>MEMORANDUM OPINION</u>

The Court, of its own accord, addresses whether the Trustee's chapter 13 plan modification can be approved, despite it drawing no objections and its approval by the debtors, Jack and Tammy Stanke.[1]

### Background

On October 14, 2016, Jack and Tammy Stanke filed for bankruptcy under chapter 13 of the Bankruptcy Code. On January 18, 2017, the Court confirmed the Stankes' chapter 13 plan, which had a term of sixty months and paid unsecured creditors an estimated six percent of their claims. ECF Nos. 21, 29.[2] On June 10, 2020, the Court approved a plan modification, which

---

[1] "Trustee" refers to Robert Wilson, the chapter 13 trustee of the Stankes' bankruptcy case.
[2] "ECF No." hereinafter refers to the numbered docket entry in this bankruptcy case, Case No. 16-60110.

increased the payout to unsecured creditors to approximately fifteen percent. ECF Nos. 45, 50. A large portion of the Stankes' unsecured debt consists of non-dischargeable student loans.

In July 2020, Jack Stanke's mother died; Stanke inherited a one-third interest in his mother's home. At an unknown date (to the Court) but during the duration of the Stankes' plan, Jack Stanke's grandfather died, with Stanke inheriting a one-sixth interest in his home. The Stankes informed the Trustee of Jack's inheritances while preparing their certifications for entry of discharge. The Trustee, upon learning of the inheritances, advised the Stankes that he would object to their chapter 13 discharges unless their plan was modified to pay unsecured creditors the value of the inheritances. The Stankes agreed, stating their desire to sell the two homes with Jack Stanke's share of the proceeds to be used to pay their debts, including their student loan debts. The Stankes and the Trustee are confident that the proceeds will be enough to pay the creditors in full.

On November 3, 2021, the Trustee moved to modify the Stankes' plan. ECF No. 69. The plan modification requires a $66,120 balloon payment which, according to the language of the modification, was due on December 2, 2021; however, at the hearing on the plan modification, the Trustee and the Stankes' counsel announced that they (the Trustee and the Stankes) had agreed that the Stankes would have six months to sell the two homes and use the proceeds for the $66,120 balloon payment. This agreement was incorporated into the Trustee's proposed order approving the plan modification. At the time the Trustee filed the modification, the Stankes had paid the Trustee the entirety of their plan base, making their last payment in October 2021, the sixtieth month of their plan.

The Trustee's plan modification is unopposed; the Stankes approve and no creditor has objected. The lack of objection by unsecured creditors is unsurprising; the modification raises

their payout from approximately fifteen percent to one hundred percent. That all interested

parties support the plan modification does not, however, end the Court's review—bankruptcy

courts have an independent duty to ensure that plan modifications comply with the requirements

of the Bankruptcy Code regardless that no objections are filed. *Cf. United Student Aid Funds,*

*Inc. v. Espinosa*, 559 U.S. 260, 277 n.14 (2010).

## A.      Plan Modification After Final Payment

The Trustee filed the plan modification on November 3, 2021—after the Stankes made

their final payment under the plan. The Bankruptcy Code states that "[a]t any time after

confirmation of the plan *but before the completion of payments under such plan*, the plan may be

modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim."

§ 1329(a) (emphasis added).[3] The provision plainly sets forth a temporal requirement

prohibiting plan modifications after all plan payments have been made. Left unanswered by the

text of § 1329(a) is whether "completion of payments" refers to payments from the debtor to the

trustee or payments from the trustee to creditors.

To discern the meaning of a statute, courts begin their inquiry with the language of the

statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). If the statute is

plain on its face, no further inquiry is warranted, unless the plain meaning demonstrably

contradicts the intention of the drafters. *Id.* If the plain meaning of a statute is not clear on its

face, courts should look to surrounding statutes and the broader statutory context to determine if

a clear meaning emerges that harmonizes the statute in question with its broader regulatory

scheme. *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33

(2000). Here, the broader statutory context of chapter 13 provides a clear answer to the question

---

[3] All references to "§" or "section" refer to 11 U.S.C., the Bankruptcy Code, unless otherwise stated.

raised in § 1329(a)—the phrase "completion of payments" must refer to payments from the debtor to the trustee.

While only in dicta, the Fifth Circuit has said that § 1329(a) prohibits a trustee from amending a plan to account for newly acquired funds *after he has received all plan payments from the debtor*. *Meza v. Truman (In re Meza)*, 467 F.3d 874, 878 (5th Cir. 2006).[4] The court in *Meza* noted that allowing a trustee to modify a plan after he received all plan payments would render § 1329(a) inconsistent with the mandatory nature of the discharge provision of § 1328(a). *Id*. Under § 1328(a), a debtor is entitled to a discharge "as soon as practicable after completion *by the debtor* of all payments under the plan." § 1328(a) (emphasis added). Thus, if a plan modification were allowed after the debtor made all plan payments, one of two results would occur: (1) the debtor would continue with new payments under the modified plan without a discharge, which would directly contravene the discharge mandate of § 1328(a)—the concern in *Meza*; or (2) the debtor would receive a discharge but would be "compelled to pay discharged debts under a modified plan." *In re Ezzell*, 438 B.R. 108, 115–16 (Bankr. S.D. Tex. 2010) (quoting *In re Phelps*, 149 B.R. 534, 538–39 (Bankr. N.D. Ill. 1993)). "Congress could never have intended such an absurd result." *Id*. at 116. Thus, the only interpretation of § 1329(a) that remains true to the text and in harmony with the broader context of chapter 13 is that the phrase "completion of payments" refers exclusively to payments made by the debtor to the trustee.

The proposed modification here states that the Trustee had received all the Stankes' payments under their plan at the time the modification was proposed. ECF No. 69. It is unclear if the Trustee proposed the modification before he made all payments under the plan to creditors;

---

[4] *Meza* held that a court may still confirm a plan modification in the circumstance where a debtor completed her plan payments after the trustee moved for modification of the plan but before the bankruptcy court could hear the matter and confirm the modification. *In re Meza*, 467 F.3d at 880. The court's statements concerning plan modifications proposed after all plan payments are completed are therefore dicta.

however, for the reasons stated above, that unknown fact is irrelevant. Because the Trustee did not file his motion to modify before the Stankes made all their payments to him, the Court is time-barred from approving the modification under § 1329(a).

**B.     Extension of Plan Beyond Sixty Months**

The Trustee's proposed plan modification will, in effect, extend the Stankes' plan to sixty-eight months (eight months after the sixtieth payment in October 2021). The Bankruptcy Code states that a chapter 13 plan modification:

> may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but *the court may not approve a period that expires after five years after such time.*

§ 1329(c) (emphasis added). The Court has interpreted this section to mean that "[a] modified plan may not . . . extend more than five years from the due date of the first payment under the original confirmed plan." *In re Dennett*, 548 B.R. 733, 737 (Bankr. N.D. Tex. 2016). "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)). With this purpose in mind, "Congress intentionally imposed a maximum five-year term in Chapter 13 bankruptcies in order to end what it termed 'the closest thing there is to indentured servitude,' where some debtors are put 'under court supervised repayment plans for seven to ten years.'" *Pierrotti v. U.S. Internal Revenue Serv. (In re Pierrotti)*, 645 F.3d 277, 281 (5th Cir. 2011) (quoting H.R. Rep. No. 95-595 at 117 (1977)). Allowing the Stankes' plan to extend beyond sixty months and delaying their discharges contravenes the plain language of § 1329(c) and Congress's intent in passing the statute.

5

Some courts have allowed "reasonable grace period[s] for debtors to cure an arrearage" that arose at the tail end of a bankruptcy plan, after the plan's sixty-month term elapsed.  *In re Klaas*, 858 F.3d 820, 828 (3d Cir. 2017); *see also In re Brown,* 296 B.R. 20, 22 (Bankr. N.D. Cal. 2003); *In re Harter*, 279 B.R. 284, 288 (Bankr. S.D. Cal. 2002).  But that is not the case here.  The Stankes have completed all their plan payments within sixty months with no pending arrearages.  The Trustee's proposed plan modification therefore violates the sixty-month time limit requirement of § 1329(c), and the Court is thus barred from approving it.

## C.    Property of the Estate

Both the Trustee and the Stankes contend that despite the time bar of § 1329(a) or the time limit requirement of § 1329(c), the modification should be allowed because Jack Stanke's inheritances are property of the estate and should therefore be included in their plan.  According to the Stankes, the Trustee will not recommend a discharge of their debts unless the inheritances, "as property of the estate," are included in their plan and paid to creditors.

### i.    Meaning of § 541(a)(5) and § 1306(a)(1)

Under § 541(a)(5), which applies to bankruptcies under any chapter, only inheritances received within 180 days of filing become property of the bankruptcy estate.  However, § 1306(a)(1) holds that, in chapter 13 cases, "all property of the kind specified" in § 541 acquired after the commencement of a case becomes property of the estate.  The interplay of § 541 and § 1306 raises the question of whether § 1306 extends the timeframe under which inheritances become property of a chapter 13 bankruptcy estate beyond 180 days or whether § 541 sets a fixed timeframe for the receipt of inheritances under any chapter of the Bankruptcy Code.  The Fifth Circuit has not answered the question, and other courts have come to differing conclusions.  *Compare Carroll v. Logan,* 735 F.3d 147, 152 (4th Cir. 2013) (holding § 1306 extends

timeframe set by § 541 beyond 180 days), *and Dale v. Maney (In re Dale)*, 505 B.R. 8, 13

(B.A.P. 9th Cir. 2014) (same), *with In re Key*, 465 B.R. 709, 712 (Bankr. S.D. Ga. 2012)

(holding § 1306 does not extend 180-day timeframe set by § 541), *and In re Schlottman*, 319

B.R. 23, 25 (Bankr. M.D. Fla. 2004) (same).

 While it is unknown to the Court when Jack Stanke's grandfather passed away, the

Stankes reported that Jack's mother died in July 2020, well beyond 180 days after filing their

case in 2016.  It is thus an open question whether the inheritances received after the § 541

timeframe are property of the estate.  But this is a question the Court need not decide here—

contrary to the parties' contentions, that property becomes estate property does not necessarily

mean it must be paid to creditors under a plan.

### ii.  Notice to the Trustee

 If, upon notice of a change in circumstances, a trustee wants to include newly acquired

property of the estate in a debtor's plan, it is incumbent upon the trustee to move for a plan

modification that complies with the Bankruptcy Code.  § 1329(a).  A debtor, however, is only

obligated to report certain changes in circumstance to the trustee.  Under Federal Rule of

Bankruptcy Procedure 1007(h), only inheritances received within the § 541 180-day timeframe

trigger a requirement to file new bankruptcy schedules, which would give notice to the trustee.

Keith M. Lundin, LUNDIN ON CHAPTER 13, § 127.9, ¶ 23, LundinOnChapter13.com (last visited

Jan. 3, 2022) ("No provision of the Code or Rules requires a Chapter 13 debtor to report the

receipt of postpetition assets or increases in income, except the narrow class of inheritances

within 180 days of the petition described in § 541(a)(5)").  Because the inheritance upon Jack

Stanke's mother's death was received more than 180 days after the petition date, the Stankes

were not required under the Bankruptcy Code to provide notice to the Trustee.  The Stankes may

have been required to report the inheritances, however, under the Standing Order Concerning All Chapter 13 Cases in the Bankruptcy Court for the Northern District of Texas ("General Order"). The General Order states that the "Debtor must notify the Trustee of any material increase in the Debtor's personal or household income and of the acquisition of any property of the estate with a value exceeding the Trustee's guidelines." General Order 2021-05 ¶ 19.

Under the doctrine of equitable tolling, it is possible that the failure of a debtor to report to the trustee an inheritance when the debtor was legally obligated to do so may allow a trustee to modify a plan even after the debtor completed all plan payments. "[E]quitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). Equitable tolling typically applies where a claimant missed a filing deadline because of his adversary's fraud or trickery. *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010). The doctrine applies to all federal statutes of limitation. *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).

In *In re Zavala*, the debtor sold her home during the pendency of her chapter 13 case and retained significant proceeds from the sale. 366 B.R. 643, 646 (Bankr. W.D. Tex. 2007). The debtor did not, however, provide notice of the sale to the trustee until just before she made her final plan payment. *Id*. The trustee moved to modify the plan to account for the new income after the trustee received the final plan payment. *Id*. The court found that the debtor was required to report a change in address under Federal Rule of Bankruptcy Procedure 4002, which would have given notice to the trustee of the sale of the property well before the time limitation of § 1329(a) for modifications was reached. *Id.* at 650. The court noted that the § 1329(a)-time limitation may be subject to equitable tolling but held that because there were insufficient facts

to show the debtor committed actual fraud by failing to report her change in address, equitable tolling did not apply, and the trustee was barred from proposing a plan modification under § 1329(a).  *Id*. at 651–52.

There is no allegation or evidence of fraud by the Stankes, and, thus, like *Zavala*, equitable tolling does not apply.  First, the General Order only requires that newly acquired "property of the estate" be reported to the trustee.  As noted earlier, it is an open question whether the inheritances are property of the estate and had to be reported to the Trustee at all. Second, the General Order provides no timeframe for when newly acquired property must be reported to the Trustee.  It is thus unclear if the Stankes' report to the Trustee of the inheritances while preparing for the certifications for entry of discharge was timely or not under the General Order.  And finally, the Trustee has made no allegation that he was prevented from proposing a plan modification at an earlier time because of fraud committed by the Stankes.

A plan modification must be filed before a debtor's final plan payment.  That the Stankes did not disclose the inheritances to the Trustee until they were preparing their certifications for entry of discharge does not alter this requirement.  And even if it did and equitable tolling did apply, the modification still violates the Code because it would extend the plan duration beyond sixty months.  Therefore, the parties' argument that the Stankes' plan must be modified now to take into account the inheritances as "property of the estate" is unavailing and must be rejected.

## Conclusion

The Court is required to deny a plan modification if it violates a requirement under the Bankruptcy Code regardless whether any creditor has objected.  The plan modification violates § 1329(a) because it was proposed after the Stankes completed their plan payments to the Trustee.  The modification also violates § 1329(c) as it would extend the plan term beyond sixty

months.  The Court denies the Trustee's modification and finds that the Stankes, having completed their plan payments, are entitled to receive their chapter 13 discharges.

The Stankes' counsel reported that it is the Stankes' desire to pay their unsecured creditors in full, including their student loans, with the inheritances.  Their student loan debt will not be discharged, so this decision will have no bearing on the Stankes' obligations to their student loan providers.  While the Stankes will receive a discharge of their other unsecured debts, this decision does not prevent them from paying their creditors on their own volition outside of the plan, which they stated is their desire.

### End of Memorandum Opinion ###